UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

THE NORTHERN TRUST COMPANY,

Plaintiff,

v.

CHRISTOPHER WALTERS,

Defendant.

**COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

Plaintiff, The Northern Trust Company ("Northern Trust"), by and through its undersigned counsel, hereby brings this action against defendant Christopher Walters, pursuant to 28 U.S.C § 1332(a), as more fully detailed below.

## INTRODUCTION

Christopher Walters, while employed by Northern Trust in the position of Relationship Advisor, repeatedly lied to a client ("Client-Victim") and Northern Trust, acting outside the scope of his authority and abusing his position. Walters personally stole money from the Client-Victim by accessing funds in the Client-Victim's Northern Trust account, circumventing security safeguards and taking steps to cover and conceal his misconduct from Northern Trust. Walters is now a former employee, and Northern Trust brings this action to hold Walters accountable for his blatant fraud and breach of fiduciary duty.

Walters' conduct was outrageous and intentional. For years, he engaged in an elaborate scheme to induce Northern Trust colleagues to approve and effectuate unauthorized transactions by falsely reporting verbal requests and authorizations from the Client-Victim. He circumvented

1

Northern Trust controls, doctored credit card statements, and falsified written instructions to give the appearance that the transactions were requested by and benefitted the Client-Victim. Unbeknownst to Northern Trust, Walters used these transactions to pay his personal credit card bills and to fund an outside business venture.

Walters' conduct was not authorized by the Client-Victim or by Northern Trust. The theft was solely for Walters' personal benefit and directly contrary to the interests of his client and employer. Once Northern Trust learned of Walters' fraudulent conduct, it engaged an outside law firm and a forensic accounting firm, commenced a comprehensive internal investigation, and then reported Walters' conduct to the appropriate authorities. Northern Trust is working to remediate the harm caused by Walters' conduct and has communicated to the Client-Victim its commitment to make the Client-Victim whole for Walters' theft. Additionally, Northern Trust has expended substantial resources in exhaustively investigating Walters' conduct.

## PARTIES

1. Christopher Walters is a resident of Miami-Dade County.

2. The Northern Trust Company is an Illinois banking corporation with its principal place of business located in Chicago, Illinois.

## JURISDICTION

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because it is an action between citizens of different states and the amount-in-controversy exceeds $75,000.

4. This Court has general and specific personal jurisdiction over Walters because Walters resides in the state of Florida and committed his wrongful conduct in Miami, Florida. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) for the same reasons.

## FACTS

5. Northern Trust is an Illinois banking corporation with its principal place of business in Chicago, Illinois. Northern Trust's offerings include trust and estate services for individual clients and families.

6. Walters was employed in Northern Trust's Florida office as a Relationship Advisor in the Wealth Management division. As a Relationship Advisor, Walters was responsible for managing client relationships and delivering high quality fiduciary services. One aspect of this role was working with clients who were the beneficiary of a trust to effectuate disbursements from the trust, to the extent such disbursements were requested by the client and appropriate under the relevant trust instruments. In November 2024, prior to his scheme being revealed, Walters was separated from his employment with Northern Trust.

7. Walters was specifically responsible for authenticating client-directed disbursement requests and relaying such requests to others at Northern Trust who would approve and initiate the transaction.

8. Walters and the Client-Victim developed a close business relationship over many years, and in retrospect, it has been determined that, as part of his scheme, Walters took steps to isolate colleagues from the Northern Trust business relationship with Client-Victim.

9. As the Client-Victim's Relationship Advisor, Walters routinely authenticated disbursement requests that the Client-Victim directed. Most of these were legitimate transactions. However, others were not.

10. Walters abused his role and breached his fiduciary duties (both to the Client-Victim and Northern Trust) by misrepresenting that certain transactions were requested by, and for the benefit of, the Client-Victim, when in fact they were not. Instead, unbeknownst to Northern Trust and the

Client-Victim, Walters originated transactions to effect disbursements for his own personal benefit from Client-Victim's account.

11. Walters went to great lengths to achieve his fraud and to conceal his fraudulent conduct from Northern Trust. For example, he modified emails from the Client-Victim before submitting the doctored communication as support for the disbursement request to give the appearance that the Client-Victim requested certain fraudulent credit card payments:

**Original Email from Client-Victim to Walters**



**Version Altered by Walters**

12. Walters submitted doctored credit card statements in which he replaced his own name with the Client-Victim's name, again to give the appearance that the payments were for the Client-Victim's benefit. He also knowingly took steps to evade Northern Trust's control systems. For example, in 2015, Northern Trust lowered the threshold dollar amount that required a secondary Northern Trust partner to seek approval from the client for a transaction. In response, Walters adjusted his fraud scheme by reducing the amount of individual fraudulent transactions. On some

4

occasions, Walters even decreased the balance or "amount due" shown on the statements to avoid triggering additional security controls:

**Original Statement**



**Version Altered by Walters**



13. Walters employed these techniques to effect payments for his personal benefit. Among other things, he used disbursements from the Client-Victim's trust to fund his fitness gym business venture, Ambush Industries. Although Walters was required to disclose outside business ventures (such as Ambush Industries) to Northern Trust, he failed to do so. Instead, he secretly funded the gym via direct wire payments to a business checking account and rent payments towards a lease that was held by the business—all while misrepresenting the payments as going to the Client-Victim. Similar to the fraudulent credit card payments, Walters falsely reported verbal instructions

and/or submitted doctored supporting materials to substantiate the false appearance that the Client-Victim requested and benefitted from the disbursements:

**Original Email from Client-Victim to Walters**



**Version Altered by Walters**



14. Northern Trust relied on Walters' representations and believed them to be true. As a result of Walters' fraudulent misrepresentations and active concealment, Northern Trust approved and processed disbursements from the Client-Victim's trust.

15. Walters willfully and knowingly elevated his own interests over the interests of the Client-Victim as well as those of Northern Trust. Walters understood what he was doing was wrong, which is why he went to great lengths to conceal his behavior from Client-Victim and Northern

Trust. Rather than carry out his fiduciary duties to the Client-Victim and Northern Trust, Walters chose to leverage his insider status and knowledge of Northern Trust's control systems to divert money for his own personal benefit.

16. Once Northern Trust learned of Walters' fraudulent conduct, it conducted a comprehensive internal investigation, with the assistance of an outside law firm and a forensic accounting firm, and then promptly reported the investigation's findings to the Client-Victim and the appropriate law enforcement authorities. Northern Trust is cooperating fully with their ongoing investigation.

17. Northern Trust has suffered significant monetary harm as a direct result of Walters' breach of fiduciary duty and fraud. Northern Trust has committed to compensating the Client-Victim for the funds stolen from the Client-Victim's account and the associated lost opportunity costs. Northern Trust has also been forced to expend substantial resources, time, and money to investigate and report this matter to the appropriate authorities.

## COUNT I – BREACH OF FIDUCIARY DUTIES OF LOYALTY AND CARE

18. Northern Trust incorporates the facts and allegations in paragraphs 1 through 17 as if set forth fully herein.

19. Walters owed Northern Trust, his employer, fiduciary duties of loyalty and care. Walters was obligated to put the interests of Northern Trust before his own self-interest and to carry out his responsibilities as Relationship Advisor in a manner that would benefit both Northern Trust and its customers and in a manner that would not cause foreseeable harm.

20. Walters breached these duties by abusing his position to steal from the Client-Victim for his own personal benefit.

21. Northern Trust has suffered damages, including investigation costs and reimbursement to the Client-Victim for the funds stolen and the associated lost opportunity costs, as a direct and proximate result of Walters' breaches.

## COUNT II – FRAUD

22. Northern Trust incorporates the facts and allegations in paragraphs 1 through 21 as if set forth fully herein.

23. Walters knowingly made fraudulent representations to Northern Trust and engaged in active concealment, all to enable his theft from the Client-Victim.

24. To give the appearance that the fraudulent transactions were authorized by the Client-Victim, Walters (i) falsely reported verbal conversations with the Client-Victim; (ii) modified email correspondence with the Client-Victim to manufacture written instructions; and/or (iii) doctored credit card statements to create a false impression that payments benefitted the Client-Victim.

25. Walters' knowledge and intent is evidenced by his doctoring of supporting materials and the financial benefit he derived from his theft.

26. Northern Trust relied on Walters' fraudulent acts and approved unauthorized transactions as a result thereof.

27. As a direct and proximate result of Walters' fraud, Northern Trust has suffered damages, including at least the amounts he has stolen from the Client-Victim, the associated lost opportunity costs, and its own investigation costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Northern Trust respectfully requests this Court:

(i) enter judgment in Northern Trust's favor and against Walters on these claims for breach of fiduciary duties and fraud;

(ii) award compensatory damages for the harm suffered by Northern Trust due to Walters' conduct;

(iii) award punitive damages as allowed by law to deter similar conduct in the future;

(iv) award pre-judgment and post-judgment interest to the extent provided by law; and

(v) grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

28. Plaintiff demands a trial by jury on all issues so triable.

DATED: August 22, 2025.

Respectfully submitted,

*/s/Barry Kamar*
Barry Kamar
(Florida Bar No. 1033842)
bkamar@kslaw.com
miamilit@kslaw.com
**KING & SPALDING LLP**
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
Tel: (305) 462-6000

Patrick M. Collins
(*pro hac vice* admission forthcoming)
Tatum Ellis
(*pro hac vice* admission forthcoming)
pcollins@kslaw.com
tellis@kslaw.com
**KING & SPALDING LLP**
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606
Tel: (312) 995-6333

*Attorneys for Plaintiff The Northern Trust Company*